**ANHEUSER–BUSCH, INC., Plaintiff,**

v.

**James A. GOODMAN, Robert P. Fohl, Oliver L. Slinker, Col. Ronald M. Sharpe, Defendants.**

**Civ. A. No. 89–0732.**

United States District Court, M.D. Pennsylvania.

Sept. 21, 1990.

---

See also, 724 F.Supp. 345.

**1050**

Gerald Gornish, Franklin Poul, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, Pa., for plaintiff.

Janice L. Anderson, Office of the Atty. Gen., Harrisburg, Pa., for defendants.

MEMORANDUM

CALDWELL, District Judge.

The parties have cross-moved for summary judgement pursuant to Fed.R.Civ. Pro. 56. Plaintiff, Anheuser–Busch, Inc., challenges certain Pennsylvania Liquor Control Board (LCB) regulations, set forth in 40 Pa.Code §§ 11.201 and 11.202, as precluding price competition between manufacturers in violation of the Sherman Act, 15 U.S.C. § 1 *et seq.* Plaintiff requests an injunction against enforcement of the regulations and a declaration that they are invalid. Defendants are the members of the Pennsylvania Liquor Control Board and the Commissioner of the Pennsylvania State Police.[1]

Defendants' motion argues: (1) that the LCB is the sovereign for purposes of controlling beer sales in Pennsylvania and hence cannot be sued; (2) alternatively, the LCB was authorized by the sovereign to promulgate the contested regulations and its conduct was accordingly "state action" exempt from review by this Court; and (3) that this Court lacks subject matter jurisdiction over plaintiff's Sherman anti-trust claim because plaintiff failed to establish the requisite "substantial effect" of the regulation on interstate commerce.

I. *Sovereign Immunity*

■ We begin our analysis of these matters with the "state action" issue. The state action defense holds the Sherman Act inapplicable "to the anti-competitive conduct of a state acting through its legislature." *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 38, 105 S.Ct. 1713, 1716, 85 L.Ed.2d 24 (1985) (interpreting the so-called *Parker* immunity established in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943)). The defense must meet two conditions:

> "First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as State policy'; second, the policy must be 'actively supervised' by the State itself."

---

1. The Board and State Police have been previously dismissed by this Court.

*324 Liquor Corp. v. Duffy*, 479 U.S. 335, 343, 107 S.Ct. 720, 725, 93 L.Ed.2d 667 (1987) (quoting *California Retail Liquor Dealers Ass'n. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980) (quoted case omitted)).

■ Defendants contend that the LCB's conduct is action of the sovereign, the Commonwealth of Pennsylvania, because the LCB is the state agency empowered with the duty to regulate the sale of alcoholic beverages in accordance with express state law. Defendant relies exclusively on *Hoover v. Ronwin*, 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984) to support this position. However, *Hoover* is readily distinguishable in that it granted immunity to a state supreme court acting legislatively, rather than, as here, an agency acting administratively. The court stated:

> Closer analysis is required when the activity at issue is not directly that of the legislature or supreme court, but is carried out by others pursuant to state authorization.... In such cases, it becomes important to ensure that the anticompetitive conduct of the State's representative was contemplated by the State.

*Hoover*, 466 U.S. at 568, 104 S.Ct. at 1995. We find that for purposes of immunity the LCB was an agency, and not a legislature or sovereign body.

As defendants cannot claim immunity they argue alternatively that their enactment and enforcement of regulations was "state action" according to the two-tiered test, outlined in *324 Liquor Corp., supra*. We disagree with defendants' position, however, and find that the challenged regulations fail to be "affirmatively articulated" in state policy or "actively supervised" by the Commonwealth.

### A. "Affirmative Articulation"

■ The state policy, here expressed in the Pennsylvania Liquor Code, has *not* manifested an intent to impede competition in the pricing of beer, to limit promotions, to fix resale prices, or to require statewide uniformity in price schedules—which are precisely the effects of the LCB's regula-

tions.[2] Defendants argue that the Code gives them the "unlimited" power to "control the manufacture, possession, sale, consumption, importation, use, storage, transportation and delivery" of all brewed beverages within the Commonwealth under 47 P.S. § 2–207. However, defendants neglect to add the provision of § 2–207(b) which gives the LCB control over beer *only* "in accordance with the provisions of this act." Defendants fail to pursue their argument that the Code clearly expresses an anti-competitive policy authorizing price-fixing of beer.

Defendants contend that the broad power given them by statute to control the sale of beer is evidence that the General Assembly intended that competition among beer manufacturers be curtailed. Defendants, however, must also show that the anticompetitive purpose of the challenged regulations is "clearly articulated and affirmatively expressed as state policy." *324 Liquor Corp., supra*, 479 U.S. at 343, 107 S.Ct. at 725.

The Supreme Court in *Community Communications Co. v. Boulder*, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982) held that a grant of *broad* regulatory powers by a legislature to a state agency does not evidence a clear intent to authorize specific regulations which have an anti-competitive effect. The Court stated:

> Acceptance of such a proposition—that the general grant of power to enact ordinances necessarily implies state authorization to enact specific anticompetitive ordinances—would wholly eviscerate the concepts of 'clear articulation and affirmative expression' that our precedents require.

455 U.S. at 56, 102 S.Ct. at 843. We expressed the same point in *Vartan v. Harristown Development Corp.*, 661 F.Supp. 596 (M.D.Pa.1987) as follows:

> For a municipality to obtain the exemption, it must show that *its anticompetitive activities* were authorized by the state pursuant to a state policy to dis-

**2.** The content of the regulations is outlined on p. 1054.

place competition with regulation or monopoly public service. [citations omitted] 661 F.Supp. at 599 (emphasis added).

Defendants in the instant case state that the LCB is "responsible for promulgation of regulations consistent with the Liquor Code." 47 P.S. § 2–207(i). However, defendants have not provided evidence that the price-stabilizing effect of the challenged regulations is in fact consistent with the Liquor Code. While the Code grants the LCB pervasive authority to control liquor and alcohol (wine and whiskey), the LCB is not empowered with unfettered discretion concerning malt and brewed beverages (beer and ale).

■ The Code specifically grants the LCB power "to fix the wholesale and retail prices at which *liquor* and *alcohol* shall be sold in Pennsylvania." § 2–207(b). However, the Code allows the LCB to regulate the sale of *beer only* "in accordance with the provisions of this act." *Id.* Concerning malt or brewed beverages, no provision in the Code grants the LCB authority to fix prices or compel price maintenance by private parties. The Code's specific reference to price-fixing only for liquor and alcohol suggests an intent to exclude malt and brewed beverages from such power. Thus, while the LCB may be given a broad power by the state to enforce Liquor Code restrictions on the sale of beer, there is no "state action" when the nature of the pricing regulations challenged, and the anti-competitive purpose of those regulations, were not clearly expressed or mandated by the State.[3]

We recognize that the parameters of "clear articulation" have been relaxed in *Town of Hallie, supra,* which held that anti-competitive intent need not be specifically or explicitly stated but should logically result from state policy. The contested

restraint must be a "foreseeable result" which results from a state policy to displace competition with regulation. *Id.,* 471 U.S. at 42–43, 105 S.Ct. at 1718–1719. A government entity need not "be able to point to a specific, detailed legislative authorization" to assert a successful *Parker* defense. *Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 415, 98 S.Ct. 1123, 1138, 55 L.Ed.2d 364 (1978). However, the state statute must clearly contemplate that the entity may engage in the contested anti-competitive restraint. *Town of Hallie,* 471 U.S. at 42, 105 S.Ct. at 1718. *See Kern–Tulare Water Dist. v. City of Bakersfield,* 828 F.2d 514, 518 (9th Cir.1987). We conclude that when the General Assembly granted the LCB power to regulate the sale of beer *according to Code restrictions,* it did not contemplate the regulations challenged here, nor that such anti-competitive conduct would replace competition in the Pennsylvania beer industry.

**B. "Active Supervision"**

■ The second tier of the "state action" defense is that the State itself must "actively supervise" the challenged regulations. We find that the regulations in the present case involve restraints on pricing which do not amount to "active supervision" under *Parker.* Active supervision by the state over price restraints must include some control over the reasonableness of the initial prices themselves. *324 Liquor Corp., supra,* 479 U.S. at 344–345, 107 S.Ct. at 725–26; *Midcal, supra,* 445 U.S. at 105–106, 100 S.Ct. at 943.

While the LCB has enacted price maintenance restrictions for 180–day periods, it has no control over the reasonableness of the prices set. The LCB is never aware of a manufacturer's prices until well after the prices have been established. The LCB at that point simply mandates that the prices,

---

**3.** Rather, the contested regulations were contrary to the State's actual intent to *promote* competition among beer manufacturers as evidenced in specific Code provisions. For example: The agreement between a manufacturer and importing distributor must confirm the right of the distributor to determine its own selling price, which brands it chooses to handle, and how it will promote them, but the distribu-

tor does agree to price the products "competitively". 47 § 4–431(d)(1), Supp. Likewise, the manufacturer is prohibited from coercing any wholesale or retail licensee with respect to the pricing of the manufacturer's products, and cannot prevent any licensee from handling a competitor's product. 47 P.S. §§ 4–492(18), 4–492(19), Supp.

whatever they may be, remain stagnant for 180 days. The LCB's issuance of citations for violations of their regulations is alone insufficient to establish "active supervision," by the State, much less a "comprehensive regulatory scheme," over the prices themselves.[4] *See Midcal* at 445 U.S. 105–106, 100 S.Ct. 943–944, and *324 Liquor Corp.* at 479 U.S. 344–45, 107 S.Ct. 725–26.

Our conclusion is buttressed by *Miller v. Hedlund,* 813 F.2d 1344 (9th Cir.1987) *cert. denied,* 484 U.S. 1061, 108 S.Ct. 1018, 98 L.Ed.2d 983 (1988). In *Miller,* the Court found that Oregon regulations, containing provisions virtually identical to those of the LCB [5], violated the Sherman Act. The court also found that the Oregon Liquor Control Commission (OLCC), which promulgated the regulations, was not immune from review under the "state action" doctrine. We apply the analysis in *Miller* directly to the case at hand.

Defendants argue that *Miller* is easily distinguishable because Oregon did not have active supervision over the OLCC's restraints. By contrast, defendants contend that the regulations challenged here are part of a "comprehensive regulatory scheme" supervised by the state, which is immune from the Sherman Act.[6] *Midcal,* 445 U.S. at 106, n. 9, 100 S.Ct. at 943, n. 9. In the present case, however, the LCB's regulatory scheme consists merely of charging beer manufacturers with violations *after* prices have been independently set by the manufacturer without supervision by the LCB. The LCB has no control over prices that may be initially set by independent producers of beer. Manufacturers may establish any price they desire and the LCB does not question the reasonableness of that price or supervise whether the price affects competition in the market. Nor does the LCB monitor market conditions to establish a price which must be charged or regulate the terms of fair trade contracts between private parties. The LCB merely issues citations where prices, whatever they may be, are increased before the requisite 180 day period.

*Midcal, supra,* is directly applicable. In *Midcal* a California statute on wine pricing required that wholesalers file their own price schedule with the State, and prohibited the sale of wine by merchants at prices other than those set initially by the wholesaler. This regulation, as well as the LCB regulations, constitute "price-maintenance" in violation of the Sherman Act. Both regulations allow the manufacturers to set price regardless of reasonableness. Then distributors, retailers and merchants down the chain of distribution are required to adhere to that price or face a citation for violating the regulations. Under the California statute, a wholesaler selling below the established prices is subject to fines, and/or a license suspension or revocation. The Court held that the California price maintenance scheme, which is even more "supervisory" than the LCB regulations, is *not* exempt from the proscriptions of the Sherman Act under the "state action" defense. The State's involvement in the pric-

---

**4.** In *Midcal* the Court articulated the difference between "active state supervision" and mere price maintenance regulations promulgated by a liquor control board as follows:

> The [pricing] program, however, does not meet the second requirement for *Parker* immunity. The State simply authorizes price setting and enforces the prices established by private parties. The State neither establishes prices nor reviews the reasonableness of the price schedules; nor does it regulate fair trade contracts. The State does not monitor market conditions or engage in any 'pointed reexamination' of the program. The national policy in favor of competition cannot be thwarted by casting such a gauzy cloak of state involvement over what is essentially a private price fixing arrangement.

*Midcal,* 445 U.S. at 105–106, 100 S.Ct. at 943–944.

**5.** Both regulations contained the requirement that any reduction in price remain constant for 180 days.

**6.** The *Midcal* case, *supra,* refers to "comprehensive regulation" as being exempt from review under the Sherman Act. However, the regulations referred to in *Midcal* concern a "state store" system for the sale of liquor and alcohol. Regulations controlling state-owned liquor stores, while comprehensive and involving active state supervision, are not comparable to the challenged regulations—which concern the sale of malt and brewed beverages sold by private manufacturers and involve a much less restrictive scheme of control.

ing system was insufficient to be considered "active supervision" as it played only a passive, retroactive role in liquor pricing.

The Ninth Circuit in *Midcal* followed the reasoning of the California Supreme Court in *Rice v. Alcoholic Beverage Control Appeals Bd.*, 21 Cal.3d 431, 146 Cal.Rptr. 585, 579 P.2d 476 (1978), in which the Court struck down a similar price maintenance regulation. The Court stated:

> In the price maintenance program before us, the state plays no role whatever in *setting* the retail prices. The prices are *established* by the producers according to their *own* economic interests, without regard to any actual or potential anti-competitive effect; the states's role is *restricted to enforcing* the prices *specified by producers*. There is no control, or 'pointed reexamination,' by the state to insure that the policies of the Sherman Act are not 'unnecessarily subordinated' to state policy. (emphasis added).

*Rice*, 21 Cal.3d at 445, 146 Cal.Rptr. at 595, 579 P.2d at 486.

 Upon consideration of the above precedent, and careful review of the powers granted the LCB in the Liquor Code, we fail to see that the LCB's issuance of citations for violations of their regulations constitutes active supervision. Further, we cannot equate the LCB's challenged regulatory practice with a "comprehensive regulatory scheme" immune from the Sherman Act.

## II. *Interstate Commerce*

The second defense raised by defendants is that their pricing regulations have no substantial effect on interstate commerce, thereby precluding review by this Court due to lack of subject matter jurisdiction. Defendants contend that because the Sherman Act is a derived from the Commerce Clause of the Constitution, the plaintiff must meet the "substantial effect" test in order to maintain its anti-trust claim in this forum.

 All that is required to establish jurisdiction for a claim alleging a Sherman Act violation is that an "appreciable amount" of interstate commerce be involved in the business which is subject to the contested regulation. *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). The activities being restricted in the present case need only take place in interstate commerce and there is no requirement for a showing that the challenged regulation itself substantially affects interstate commerce. *McLain*, 444 U.S. at 243, 245, 100 S.Ct. at 508, 509–510. It is undisputed that plaintiff's business is involved in interstate commerce—it is a Missouri corporation which sells beer nationwide, including beer sales in Pennsylvania which constitute approximately 26.7% of the Pennsylvania market. Based on these facts alone we have subject matter jurisdiction over plaintiff's anti-trust claim.

## III. *Sherman Act Violation*

As we have rejected the defenses of sovereign immunity, "state action," and lack of jurisdiction, our analysis turns directly to the alleged Sherman Act violation. Section 1 of the Act prohibits unreasonable restraints of trade effected by agreements or conspiracies among private parties to fix prices. It has been long held that the maintenance of prices prevents competition among those who trade in competing goods. *Dr. Miles Medical Co. v. John D. Park & Sons*, 220 U.S. 373, 407, 31 S.Ct. 376, 384, 55 L.Ed. 502 (1911).

 The challenged regulations prohibit a manufacturer from increasing a price to distributors within a 180 day period after making any reduction in price. 40 Pa. Code § 11.201(b). This limit is also applicable any time a manufacturer introduces a new brand or package. 40 Pa.Code § 11.201(c). The initial reduction in price must be reflected throughout the chain of distribution (i.e. the importing distributor must charge the reduced price to the distributor, who must in turn charge the reduced price to the retailer, etc.) The regulations further provide that whenever the manufacturer reduces a price to any distributor it must reduce the price to all

other distributors across Pennsylvania in an equal amount. 40 Pa.Code § 11.201(d). Upon review of the applicable law we conclude that the regulations are equivalent to private price-fixing and price-maintenance schemes which violate section 1 of the Sherman Act.

State liquor boards in the past have argued that when there is no agreement or concerted activity among manufacturers and wholesalers, the Sherman Act's proscription against price-fixing does not apply to liquor board regulations. They claim that when independent manufacturers individually comply with their regulations, the lack of concerted activity is considered "unilateral action" and is therefore immune from scrutiny under the Act.

However, the Supreme Court has consistently held that when price maintenance by individual parties is facilitated or compelled by state regulation competition is destroyed as effectively as it private parties formed an agreement not to compete. *Midcal, supra,* (interpreting *Dr. Miles, supra,* 220 U.S. at 408, 31 S.Ct. at 384).[7] In other words, by forcing manufacturers to engage in price-fixing by threatening penalties, the state "compels activity that would otherwise be a *per se* violation of the Sherman Act,"[8] *Miller, supra,* 813 F.2d at 1349, and the regulation itself effectively impedes competition, thereby violating the Act. This point is expressed by the Supreme Court in *Rice,* as follows:

A state statute, when considered in the abstract, may be condemned under the antitrust laws only if it mandates or authorizes conduct that necessarily constitutes a violation of the antitrust laws in all cases, or if it places irresistible pressure on a private party to violate the antitrust laws in order to comply with the statute.

*Rice,* 458 U.S. at 661, 102 S.Ct. at 3300.

The LCB's threat to issue citations to private producers who refuse to adhere to its price maintenance scheme is a form of compulsion. *Schwegmann, infra,* 341 U.S. at 389, 71 S.Ct. at 748. The LCB's regulations effectively force private beer manufacturers to engage in price-fixing which is unlawful *per se. Miller, supra,* 813 F.2d at 1349. The LCB's regulations *require* private manufacturers to maintain prices involuntarily and by doing so, the regulations, by their own terms, force agreements[9] to take place which violate antitrust restrictions. The regulations themselves, therefore, violate the Sherman Act as they facilitate anti-competitive agreements. *Id.*

Our conclusions are supported by *Miller v. Hedlund,* 813 F.2d 1344 (9th Cir.1987), *cert. denied,* 484 U.S. 1061, 108 S.Ct. 1018, 98 L.Ed.2d 983 (1988), in which regulations which parallel those at issue were declared violative of the Sherman Act. The Court stated:

An agreement to adhere to previously announced prices and terms of sale is unlawful *per se* under the Sherman Act, "even though advance price announcements are perfectly lawful and even though the particular prices and terms *were not themselves fixed by private agreement." Catalano, Inc. v. Target*

7. In explaining the *Midcal* decision, the Supreme Court stated:

We examined a statute that *required* members of the California wine industry to file fair trade contracts or price schedules with the State, and provided that ... wholesalers *must* a post resale price schedules for that producer's brands. We held that the statute facially conflicted with the Sherman Act because it *mandated* resale price maintenance, an activity that has long been regarded as a *per se* violation of the Sherman Act. [citations omitted].

*Rice v. Norman Williams Co.,* 458 U.S. 654, 659, 102 S.Ct. 3294, 3299, 73 L.Ed.2d 1042 (1982) (emphasis in original).

8. It is important to note that a state which compels private parties to engage in anti-competitive activity is not immune from anti-trust scrutiny. "A State does not give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful ..." *Parker, supra,* 317 U.S. at 351, 63 S.Ct. at 313, 87 L.Ed. at 315.

9. The challenged regulations require beer producers to fix prices which wholesalers must agree to before they, in turn, sell at that "agreed" price to distributors. This arrangement can be considered an anti-competitive "agreement" between the wholesaler and producer which was mandated by the state.

*Sales, Inc.*, 446 U.S. 643, 647, 100 S.Ct. 1925, 1928, 64 L.Ed.2d 580 (1980) (*per curiam*), *discussing Sugar Institute v. United States*, 297 U.S. 553, 56 S.Ct. 629, 80 L.Ed. 859 (1936). (emphasis added).

. . . .

While it is true that there is no agreement or concerted activity among the wholesalers, it can not be ignored that the challenged regulations facilitate the exchange of price information and requires adherence to the publicly posted prices. In other words, the state compels activity that would otherwise be a *per se* violation of the Sherman Act.

. . . .

*Schwegmann* demonstrates that a showing of concerted activity among the Oregon wholesalers is not necessary to establish an antitrust violation. The mere fact that each wholesaler complies unilaterally with the regulations does not save the impermissible pricing scheme from an antitrust challenge. In *Schwegmann*, non-contracting retailers were compelled to comply unilaterally with a state-authorized pricing scheme, but the absence of concerted activity among the retailers was not a bar to a finding of a Sherman Act violation.

*Miller*, 813 F.2d at 1349–51. The Court relied on the language in *Fisher v. City of Berkeley*, 475 U.S. 260, 106 S.Ct. 1045, 89 L.Ed.2d 206 (1986) which stated:

> Not all restraints imposed upon private actors by government units necessarily constitute unilateral action outside the purview of section 1. Certain restraints may be characterized as 'hybrid,' in that nonmarket mechanisms merely enforce private marketing decisions. See *Rice v. Norman Williams Co.*, 458 U.S. 654, 665, 102 S.Ct 3294, 3302, 73 L.Ed.2d 1042 (1982) ... Where private actors are thus granted "a degree of private regulatory power," ... the *regulatory scheme may be attacked under section 1.* Indeed,

this Court has twice found such hybrid restraints to violate the Sherman Act. See *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384 [71 S.Ct. 745, 95 L.Ed. 1035] (1951); *California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.*, 445 U.S. 97 [100 S.Ct. 937, 63 L.Ed.2d 233] (1980).

*Berkeley*, 475 U.S. at 267–68, 106 S.Ct. at 1050.[10]

■ Based on the above precedent we find that the LCB regulations are invalid under the Sherman Act. Any regulation tending to stabilize prices, insulate prices from the flexibility of the free market, or impede a manufacturer's ability to employ market strategies through short-term or geographically-based price promotions is counter to the broad thrust of the Sherman Act. *Dr. Miles, supra. See, Great Atlantic & Pacific Tea. Co. v. FTC*, 440 U.S. 69, 80, 99 S.Ct. 925, 933, 59 L.Ed.2d 153 (1979); *O. Hommel Co. v. Ferro Corp.*, 659 F.2d 340, 346–47 (3d Cir.1981), *cert. denied* 455 U.S. 1017, 102 S.Ct. 1711, 72 L.Ed.2d 134 (1982). The LCB's regulations intrude in all of these areas.

■ The challenged LCB regulations impose administrative penalties on manufacturer's who fail to stabilize their prices accordingly, thereby compelling manufacturer's to comply with the anti-competitive restrictions promulgated by the LCB. Manufacturers, like the plaintiff, are unable to engage in competitive short-term price reductions or "promotions" without courting a penalty from the LCB. Moreover, the LCB regulation requiring manufacturers to maintain the same price to all distributors in the state creates a bar to flexibility in geographic promotions, which are based on different markets and competition levels for various locations in Pennsylvania.

The Supreme Court in *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 389, 71 S.Ct. 745, 748, 95 L.Ed. 1035 (1951), held invalid a statute which compelled a private manufacturer and other

---

**10.** The Court in *Miller* distinguished its conclusions from the holding in *Berkeley,* because Berkeley's regulatory scheme was purely public, as opposed to restraints on private manufacturers.

retailers to maintain the same prices throughout the chain of distribution. The Court stated, "When a state compels retailers to follow a parallel price policy, it *demands* private conduct which the Sherman Act forbids." *Id.*

Under the LCB regulations manufacturers are able to independently set prices but must maintain those prices for the requisite period. Because each manufacturer is subject to the same 180–day requirement, as well as the "state-wide" maintenance requirement, there does not appear to be a competition problem because each manufacturer may set its own prices competitively at the onset. Also there is no requirement that manufacturers establish the same price, again precluding any apparent anti-trust problems. However, *Midcal* holds that the regulations do, in fact, violate the Sherman Act, because they restrict competition.

In *Midcal* a California statute compelled wholesalers to announce and maintain their price. The Court held that regardless of the absence of concerted activity among private parties, the statute required price maintenance inconsistent with the Sherman Act and therefore was invalid. *Midcal, supra,* 445 U.S. at 102, 100 S.Ct. at 941. The Court reasoned that a state's "vertical control" over individual manufacturers "*destroys horizontal competition* as effectively as if wholesalers formed a combination [conspiracy] and endeavored to establish the same restrictions by agreement with each other." *Id.* (emphasis added).

The courts in *Miller, Schwegmann, Rice,* and *Midcal, supra,* held that regulations which force compliance with price maintenance schemes, like the LCB regulations, violate the Sherman Act. Defendants only discuss the *Miller* case and contend that it is inapplicable to the case at bar. Defendants, however, distinguish *Miller* based only on its "state action" findings, and we have already refuted the "state action" defense. Defendants fail to distinguish *Miller* on findings of Sherman Act violations, or establish that the 180–day price maintenance regulations in *Miller* were different than the LCB regulations.

Furthermore, defendants allege that the General Assembly of Pennsylvania intended their promulgation of anti-competitive regulations and that the LCB followed that authorization. In defendants' reply brief they state: "Undoubtedly, in Pennsylvania the General Assembly replaced manufacturer's competitive freedom with a complex, severely restrictive statutory and regulatory scheme." (Defendants' Brief in Opposition at 5.) As noted, we have rejected defendants' claim that the LCB regulations are exempt from Sherman Act inquiry based on the "state action" doctrine. Thus, we treat defendants' argument as a concession that the regulations are in fact anti-competitive. Defendants rely strictly on defenses of immunity and jurisdiction and do not otherwise dispute that the regulations in fact conflict with the Sherman Act. We conclude, therefore, that no material issue of fact remains in dispute.

We will issue an appropriate order.

### ORDER

AND NOW, this 21st day of September, 1990, upon consideration of the cross-motions for summary judgment, it is ordered and declared that:

1. Pennsylvania Liquor Control Board Regulations, set forth in 40 Pa.Code §§ 11.201 and 11.202, restrain trade in violation of the Sherman Anti-Trust Act, § 1, et seq. and are therefore invalid. Defendants are enjoined from enforcing said regulations.

2. Plaintiff's motion for summary judgment is granted and defendants' motion for summary judgment is denied.

3. Judgment is hereby entered in favor of plaintiff, Anheuser-Busch, Inc., and against defendants, James A. Goodman, Robert P. Fohl, Oliver L. Slinker, and Col. Ronald M. Sharpe.

4. The Clerk of Court shall close this file.