[605 NYS2d 538]

JETRO CASH AND CARRY ENTERPRISES, INC., Appellant, v STATE OF NEW YORK DEPARTMENT OF TAXATION AND FINANCE et al., Respondents.

Third Department, December 23, 1993

## APPEARANCES OF COUNSEL

*Donovan Leisure Newton & Irvine,* New York City *(Kenneth E. Newman, Susan Hart-White* and *Deanna R. Waldron* of counsel), and *Couch White Brenner Howard & Feigenbaum,* Albany *(Lawrence H. Cooke* and *Paul A. Feigenbaum* of counsel), for appellant.

*Robert Abrams, Attorney-General,* Albany *(Denise A. Hartman* and *Nancy A. Spiegel* of counsel), for respondents.

*Phillips, Nizer, Benjamin, Krim & Ballon,* New York City *(Thomas G. Jackson* and *Carol M. Goodman* of counsel), for New York State Association of Tobacco and Candy Distributors Inc., *amicus curiae.*

## OPINION OF THE COURT

CREW III, J.

In 1975 New York enacted the Cigarette Marketing Standards Act (hereinafter CMSA), which regulates the resale of

cigarettes by establishing price floors below which an agent, wholesaler or dealer may not sell cigarettes *(see,* Tax Law art 20-A). Plaintiff, a licensed cigarette stamping agent and wholesale reseller of cigarettes, commenced this action seeking a judgment declaring that the CMSA is unconstitutional in that it violates the Supremacy Clause of the US Constitution by violating the Sherman Antitrust Act (15 USC §§ 1-7). After issue was joined, plaintiff moved for summary judgment and defendants cross-moved for similar relief. Supreme Court denied plaintiff's motion and granted defendants' cross motion on the ground that the CMSA is immune from the Federal antitrust laws by reason of the "State action" doctrine. Plaintiff has appealed.

■ Because resale price maintenance is a per se violation of the Sherman Antitrust Act *(see, 324 Liq. Corp. v Duffy,* 479 US 335) and, consequently, a violation of the Supremacy Clause of the US Constitution *(see, Metropolitan Package Store Assn. v Koch,* 89 AD2d 317, *mot to dismiss appeals granted* 58 NY2d 1112, *appeal dismissed* 464 US 802), our inquiry focuses on whether the CMSA may nonetheless be upheld by reason of the State action immunity doctrine *(see, e.g., Parker v Brown,* 317 US 341) which, in turn, provides that the State action is immune if the State has articulated a clear and affirmative policy to allow anticompetitive conduct and the State provides active supervision of anticompetitive conduct undertaken by private entities *(see, Federal Trade Commn. v Ticor Tit. Ins. Co.,* 504 US —, —, 112 S Ct 2169, 2175-2177; *Parker v Brown, supra,* at 350-352). There can be no doubt, and, indeed, plaintiff does not seem to dispute, that the first prong of the State action doctrine has been satisfied here. In enacting the CMSA, the State articulated a clear and affirmative policy for the regulation and control of the resale price of cigarettes. In the bill adopting the legislation it was provided: "The legislature hereby finds that it is necessary to regulate and control the sales price of cigarettes within the state at the wholesale and retail levels for the purpose of stabilizing the cigarette industry in New York state. The legislature finds that predatory pricing by cigarette dealers from states surrounding New York has contributed to the destruction of the price structure in New York state. Those dealers, who are protected in their home states by cigarette sales price laws similar to that contained in this act, have had an unfair advantage over New York cigarette dealers. This act is enacted by the legislature to prevent the movement of the

cigarette distribution industry outside of New York, with the loss of jobs attendant to such a move and to prevent the sale of untaxed cigarettes and the evasion of state and local cigarette and sales taxes" (L 1985, ch 897, § 1).

Plaintiff next argues that the CMSA does not satisfy the second prong of the statute in that it permits private parties to establish prices in violation of section 1 of the Sherman Antitrust Act. We disagree. The CMSA prohibits vendors from selling cigarettes at a price below the cost to the agent, the wholesale dealer or the retail dealer (see, Tax Law § 483 [b]; § 484 [a]). "Cost" is defined as the "basic cost of cigarettes" plus the cost of doing business of the agent, wholesaler or retailer (Tax Law § 483 [b] [1] [A]; [2] [A]; [3] [A]). "Basic cost of cigarettes" is defined, in turn, as "the invoice cost of cigarettes to the agent who purchases from the manufacturer, or the replacement cost of cigarettes to the agent, in the quantity last purchased, whichever is lower, less all trade discounts, except discounts for cash, to which shall be added the full face value of any stamps which may be required by law" (Tax Law § 483 [a] [1]). Resales of cigarettes cannot be less than the basic cost of cigarettes plus the statutorily presumed cost of doing business, which is rebuttable (see, Tax Law § 483 [b]; § 485). While the CMSA does not control the initial offering price of the manufacturer, indeed it cannot, this is not fatal to the statute (see, *Serlin Wine & Spirit Merchants v Healy*, 512 F Supp 936, 939, *affd sub nom. Morgan v Division of Liq. Control, Dept. of Bus. Regulation*, 664 F2d 353, 355). Once the manufacturer establishes its price, the statutory scheme defines the price at which the cigarettes may be resold, and it is the statute, not the individual parties, that determines the ultimate resale price. Additionally, "by structuring a detailed mechanism for determining [the resale price], the State * * * has satisfied the 'active supervision' requirement of the state action doctrine" *(Morgan v Division of Liq. Control, Dept. of Bus. Regulation,* 664 F2d 353, 356, *supra)*. Finally, as further evidence of the State's active supervision and continuing oversight of the CMSA, we note that the Legislature has enacted several amendments since the statute's inception (see, supra, at 356 ["legislature has frequently debated the merits of the pricing system"]).

In reaching this result, we reject plaintiff's assertion that the CMSA's treatment of rebates and concessions allows private parties to manipulate the resale price of cigarettes in violation of the statutory scheme. Specifically, plaintiff urges

that because the CMSA provides that rebates or concessions are not used to determine the minimum resale price, the manufacturer can unilaterally determine whether to designate a discount as a "trade discount" and allow the minimum resale price to fall or grant a rebate and thereby reduce the actual cost of cigarettes without affecting the preset minimum resale price. We disagree. Rebates or concessions, which are payments made at a specified point in time during which a specific amount of cigarettes has been purchased, are excluded from "trade discounts" (see, 20 NYCRR 340.2 [a] [2] [iii]) because they are not, a fortiori, determinable at the time of purchase. Additionally, rebates and concessions are given as a business incentive to encourage "customers" to purchase in greater quantities than they otherwise might, a perfectly legitimate business purpose. Thus, while it is true that those customers who receive a rebate or concession may indeed make a greater profit on the transaction, the CMSA does not enable those same customers to engage in predatory pricing by undercutting their competitors.

Further, where a manufacturer or purchaser seeks to designate a rebate or concession as a "trade discount" for the purpose of circumventing the CMSA, the Legislature has anticipated and protected against just such an event. The CMSA provides that rebates or concessions, in and of themselves, are not unlawful *where they do not "directly or indirectly serve to reduce the price below that at which cigarettes can be lawfully sold or purchased in this State"* (20 NYCRR 344.1 [b] [2] [emphasis supplied]). Where, as suggested by plaintiff, a manufacturer and purchaser attempt to circumvent the statutory scheme, the purchaser is in violation of the statute and is subject to both civil and criminal sanctions (see, Tax Law § 484 [a] [5]; § 1829). Undoubtedly anticipating just such a potential, the Legislature provided that the State Tax Commission or the Supreme Court, in determining the bona fides of the cost of the agent, wholesaler or retailer, should consider whether the cigarettes were purchased at a fictitious price or under invoices that concealed the true costs or terms of purchase (see, Tax Law § 485 [a] [1]). So, while plaintiff is correct that private parties can manipulate prices, just as they can ignore the CMSA entirely, such conduct is not statutorily sanctioned and is illegal. As the Supreme Court has instructed: "[The purpose of the active supervision inquiry] is to determine whether the State has exercised sufficient independent judgment and control so that the details of the rates or

prices have been established as a product of deliberate state intervention, not simply by agreement among private parties. * * * [T]he analysis asks whether the State has played a substantial role in determining the specifics of the economic policy. The question is not how well state regulation works but whether the anticompetitive scheme is the State's own" *(Federal Trade Commn. v Ticor Tit. Ins. Co.,* 504 US —, —, 112 S Ct 2169, 2177, *supra).* Clearly, here, the details of the resale prices have been established as a product of deliberate State intervention and the anticompetitive scheme is that of New York, not private parties.

■ With regard to plaintiff's argument that the CMSA is unconstitutional as applied because defendant Department of Taxation and Finance refused to permit it to apply a lesser markup percentage than that presumed by the statute, plaintiff has failed to exhaust its administrative remedies, thereby preventing it from litigating the issue in a court of law *(see, Matter of Cady v Clark,* 176 AD2d 1055).*

WEISS, P. J., MIKOLL, YESAWICH JR. and WHITE, JJ., concur.

Ordered that the judgment is affirmed, without costs.

---

* It should be noted that plaintiff commenced a CPLR article 78 proceeding seeking to compel the Department to accept its submission of proof of a lesser cost of doing business, which proceeding was dismissed for failure to exhaust administrative remedies. Plaintiff filed a notice of appeal from that judgment, but has not perfected the appeal.