FORREST CITY GROCERY
COMPANY,

      Plaintiff/Appellant,

VS.

TENNESSEE DEPARTMENT OF
REVENUE,

      Defendant/Appellee.

Appeal No.
01-A-01-9505-CH-00198

Davidson Chancery
No. 93-239-II

FILED

Oct. 19, 1995

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE C. ALLEN HIGH, CHANCELLOR

JOHN M. FARRIS
E. DEAN WHITE, III
One Commerce Square
Suite 2000
Memphis, Tennessee  38103
      Attorneys for Plaintiff/Appellant

CHARLES W. BURSON
Attorney General & Reporter

PERRY ALLAN CRAFT
Deputy Attorney General

ARSHAD (PAKU) KHAN
SEAN P. SCALLY
Assistant Attorneys General
450 James Robertson Parkway
Nashville, Tennessee  37143-0492
      Attorneys for Defendant/Appellee

AFFIRMED AND REMANDED


BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

# O P I N I O N

The plaintiff, Forrest City Grocery Company, filed a declaratory judgment action in the Chancery Court of Davidson County alleging that the Unfair Cigarette Sales Law violates (1) the Sherman Antitrust Act, and (2) the plaintiff's right to due process. The chancellor found the issues in favor of the statute and dismissed the complaint. We affirm.

## I.

Forrest City is an Arkansas corporation that sells cigarettes to retailers in Tennessee. In June of 1992, the Tennessee Department of Revenue served Forrest City with a summons seeking information regarding the conduct of Forrest City's wholesale cigarette business. It appears that the Department of Revenue considered Forrest City's practice of passing cigarette manufacturers' discounts along to the retailers to be a violation of the Unfair Cigarette Sales Law (UCSL). On January 25, 1993 Forrest City filed a complaint for a declaratory judgment in the Chancery Court of Davidson County seeking a declaration that the UCSL was unconstitutional because it violated the Sherman Anti-Trust Act and because it violated Forrest City's right to due process. The chancellor upheld the Act against both arguments.

## II.

### Does the UCSL violate the Sherman Act?

The Sherman Anti-Trust Act, 15 U.S.C. §§ 1-7, makes unlawful every contract, combination or conspiracy "in restraint of trade or commerce among the several states." Under the Supremacy Clause, Art. 6 § 2 of the United States Constitution, a state law violating the Sherman Act would be unconstitutional.

The UCSL makes it unlawful for any retailer or wholesaler to sell cigarettes below cost, with the intent to injure competitors or destroy or lessen competition. Tenn. Code Ann. § 47-25-303(a). Evidence of the prohibited act is prima facie evidence of an intent to injure competitors or destroy substantially or lessen competition. Tenn. Code Ann. § 47-25-303(b).

"Cost to the wholesaler" is defined in the Act as the "basic cost of cigarettes" plus the "cost of doing business by the wholesaler." Tenn. Code Ann. § 47-25-302(6). The "basic cost of cigarettes" is defined as the manufacturer's invoice price without consideration of any discounts whatever, Tenn. Code Ann. § 47-25-302(1), and the "cost of doing business by the wholesaler" is defined as one and three-fourths percent (1 3/4%) of the basic cost of cigarettes plus cartage to the retail outlet (if performed by the wholesaler) of one-half of one percent (1/2%) of the basic cost. Tenn. Code Ann. §47-25-302(4).

The anti-competitive effect of the UCSL is apparent. The state argues, however, that the Sherman Act does not apply to state action, relying on what has become known as the "state action doctrine" first recognized in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). In *Parker* the state of California sought to restrict competition among raisin growers and maintain prices in the distribution of their raisins to packing companies. The state accomplished its purpose by an elaborate scheme requiring the growers to pool all their raisins for grading and marketing according to criteria calculated to maintain prices. The United States Supreme Court conceded that the scheme might violate the Sherman Act "if it were organized and made effective solely by virtue of a contract, combination or conspiracy of private persons, individual or corporate." 317 U.S. at 350, 63 S.Ct at 313, 87 L.Ed. at 325. But the Court found no authority in the Sherman Act itself or in its legislative history to suggest "that its purpose was to restrain a state or its officers or agents from

activities directed by its legislature." 317 U.S. at 350, 63 S.Ct. at 313, 87 L.Ed. at 326. The Act is directed against individual and not state action.

In *California Liquor Dealers v. Midcal Aluminum*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 235 (1980), the Court reviewed a section of the California Business and Professions Code which required all wine producers, wholesalers, and rectifiers to file a fair trade contract or a price schedule with the state. If the wine producer did not set prices through a fair trade contract, wholesalers were required to post a resale price schedule for that producer's brands. A licensee selling below the established price faced fines and/or suspension or revocation of the license to sell such products.

The United States Supreme Court held that the California wine pricing provisions violated the Sherman Act. Finding that the California Act allowed wine prices to be fixed by private persons and not the state, the Supreme Court held that the state action immunity recognized in *Parker v. Brown* did not apply. Quoting from *Parker v. Brown,* the Court said "a state does not give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful." 445 U.S. at 106, 100 S.Ct. at 943, 63 L.Ed.2d at 243. In rendering its opinion the Supreme Court said that *Parker v. Brown* and the cases interpreting it required two things in order for the state action immunity to apply: (1) the restraint must be clearly articulated and affirmatively expressed as state policy and (2) the policy must be actively supervised by the state itself. 445 U.S. at 105, 100 S.Ct. at 943, 63 L.Ed.2d at 243. Later, the Court noted an absence of a "pointed reexamination" of the program on the part of the state authorities.

Forrest City argues that the state fails the two part test set out in *Midcal.* Boiled down to its basics, Forrest City's argument is an attack on minimum markup statutes per se. If the state does not regulate cigarette prices from the manufacturer

to the retailer -- or at least monitor the prices all along the delivery chain -- the state has not met the "active supervision" requirement of the *Midcal* test.

On the other hand, the Commissioner argues that minimum markup statutes are per se entitled to the state action exemption. As creatures of the legislature such statutes result from the purest form of state action. No other agency, commission, or trade group is delegated the authority to fix prices. Therefore, there is no requirement of active supervision other than legislative oversight.

Both sides have some support for their arguments. Forrest City cites *Alcoholic Bev. Control Bd. v. Taylor Drug Stores, Inc,*, 635 S.W.2d 319 (Ky. 1982), where the Kentucky Supreme Court held that that state's minimum markup statute relating to liquor pricing violated the Sherman Act because the state, in the final analysis, exercised no control over prices. Stating what we believe to be true also in Tennessee the *Taylor* court said, "[T]he state participates in fixing prices only to the extent that it adds statutory minimum markups to prices fixed by private individuals." See also *Miller v. Hedlund*, 813 F.2d 1344 (9th Cir. 1987) and *Anheuser-Busch v. Goodman*, 745 F.Supp. 1048 (M.D. Pa. 1990).

The Commissioner cites *Jetro Cash & Carry Enterprises, Inc. v. Department of Taxation*, 605 N.Y.S. 538 (A.D. 1993), a case from New York involving cigarette pricing. The statute involved, although not identical, was similar to the Tennessee statute. In upholding state action immunity the court said,

> [O]nce the manufacturer establishes its price, the statutory
> scheme defines the price at which cigarettes may be resold,
> and it is the statute not the individual parties, that determines
> the ultimate resale price. 605 N.Y.S. at 540.

For the same result, see *Morgan v. Division of Liquor Control Conn., Dept. of Business Regulation*, 664 F.2d 353 (2d Cir. 1981), where the Second Circuit Court of Appeals specifically found that a minimum markup statute satisfied the active supervision requirement of the *Midcal* test.

There are cases from the Supreme Court itself that lend support to the Commissioner's argument, although the decisions do not involve minimum markup statutes. In *Hoover v. Ronwin*, 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984), a case involving the Supreme Court of Arizona's requirements for admission to the bar, the United States Supreme Court discussed the two parts of the *Midcal* test and how the test should be applied. The Court said:

> "[I]n cases involving the anti-competitive conduct of a nonsovereign state representative the Court has required a showing that the conduct is pursuant to a 'clearly articulated and affirmatively expressed state policy' to replace competition with regulation . . . . The court also has found the degree to which the state legislature or supreme court supervises its representatives to be relevant to the inquiry . . . . When the conduct is that of the sovereign itself, on the other hand, the danger of unauthorized restraint of trade does not arise. Where the conduct at issue is in fact that of the state legislature or supreme court, we need not address the issues of 'clear articulation' and 'active supervision.'"

466 U.S. at 569, 104 S.Ct. at 1995, 80 L.Ed.2d at 600.

In *Federal Trade Commission v. Ticor Insurance Co.*, 504 U.S. ___, 112 S.Ct. 2169, 119 L.Ed.2d 410 (1992), a case involving a state's regulation of title insurance rates, the Court further expanded on the "active supervision" requirement of the *Midcal* test and said, "The question is not how well state regulation works but whether the anti-competitive scheme is the state's own." 504 U.S. at ___, 112 S.Ct. at 2177, 119 L.Ed.2d at 423.

Forrest City also relies on a Supreme Court case, *324 Liquor Corp. v. Duffy*, 479 U.S. 335, 107 S.Ct. 720, 93 L.Ed.2d 667 (1987), which struck down the pricing provisions of New York's Alcoholic Beverage Control Law because the scheme was not actively supervised by the state. We find, however, that the New York law was not a markup statute like the UCSL. In fact, the Court noted that the New York statute was not a minimum markup statute and indicated that such statutes might pass the *Midcal* test. The Court cited the Second Circuit's opinion in *Morgan* as authority for that position.

Taking into account all these shades of opinion, we are persuaded that the *Midcal* test does not apply to anti-competitive price schemes established by the legislature itself. It is only when the decisions producing anti-competitive results are delegated to other agencies or individuals that a more rigorous examination of the state's part in the decisions must be made. Therefore, the UCSL, an anti-competitive scheme created by the legislature itself, is immune from attack on the ground that it violates the Sherman Act.

### III.

### Does the UCSL violate Due Process?

Where the UCSL makes evidence of selling below the statutorily mandated cost prima facie evidence of the intent to injure competitors, Forrest City asserts that it unconstitutionally shifts the burden of proof to the defendant in a criminal prosecution for violating the Act. As established in *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), and applied in *State v. Bryant*, 585 S.W.2d 586 (Tenn. 1979), the rule is that the constitutionality of the statute depends on whether it establishes a "permissive inference" or a "mandatory presumption." *See also Lowe v. State*, 805 S.W.2d 368 (Tenn. 1991). If it is a permissive inference, one that allows but does not require the jury to infer the presumed fact from the proved fact, a jury instruction concerning the

inference would be error only if under the facts of the case there would be no rational way the jury could make the connection permitted by the inference.

In *Bryant* the Court was dealing with a statute making evidence of entering another's premises in a mask prima facie evidence of an intent to commit a felony. The court said "prima facie" could mean either a permissive inference or a mandatory presumption but interpreted the statute liberally in order to preserve its constitutionality. *See State v. Netto*, 486 S.W.2d 725 (Tenn. 1972).

Being under the same mandate to preserve the constitutionality of statutes, we interpret the UCSL as creating a permissive inference rather than a mandatory presumption. In a criminal prosecution for violating the Act, the Court could charge the inference if, under the facts of the case, the jury could make the connection permitted by the inference.

The judgment of the trial court is affirmed and the cause is remanded to the Chancery Court of Davidson County for any further proceedings that may become necessay. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE

_____
WILLIAM C. KOCH, JR., JUDGE