**BEER & POP WAREHOUSE,**
**et. al., Plaintiffs,**

v.

**John E. JONES, III, et. al., Defendants.**

**No. Civ.A.1:97–CV–0753.**

United States District Court,
M.D. Pennsylvania.

Jan. 14, 1999.

Roslyn M. Litman, Litman, Litman, Harris, Brown & Watzman, P.C., Pittsburgh, PA, Martha S. Helmreich, Pittsburgh, PA, W. Thomas McGough, Jr., Reed Smith Shaw & McClay, Pittsburgh, PA, Robert B. Hoffman, Reed, Smith, Shaw & McClay, Harrisburg, PA, Pamela Ewing, Pittsburgh, PA, for plaintiffs.

Joel M. Ressler, Harrisburg, PA, Susan J. Forney, Office of Attorney General, Harrisburg, PA, for defendants.

### MEMORANDUM

CAPUTO, District Judge.

On May 12, 1997, plaintiffs Beer & Pop Warehouse, Inc; Case Beer & Soda Out-let, Inc.; Jet Distributors, Inc.; and Q.F.A., Inc. t/b/a "Beer World" filed a complaint alleging that subsections 447(a)(2), (a)(3), (b), and (c) of the Pennsylvania Liquor Code violate section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiffs seek an injunction against the enforcement of the above provisions of the Code. On June 24, 1997, defendants John E. Jones, III, the Chairman of the Pennsylvania Liquor Control Board ("LCB"); Robert Fohl, a member of the LCB; Robert P. Kaskiel, the Director of the LCB's investigative unit; and Paul J. Evanko, the Commissioner of the Pennsylvania State Police filed a motion to dismiss. On October 17, 1997, the Honorable William W. Caldwell denied defendants' motion to dismiss. (See Doc. # 22.)

On May 15, 1998, plaintiffs filed a motion for summary judgment. On June 29, 1998, defendants filed a motion for summary judgment. Because I find that the plaintiffs have produced evidence of a "threatened" anti-trust injury, the defendants' motion for summary judgment will be denied. In addition, because I find that subsections 447(a)(2), (a)(3), (b), and (c) of the Pennsylvania Liquor Code violate section 1 of the Sherman Act, 15 U.S.C. § 1, plaintiffs' motion for summary judgment will be granted. Defendants will be permanently enjoined from enforcing subsections 447(a)(2), (a)(3), (b), and (c) of the Pennsylvania Liquor Code.

### I. BACKGROUND

The plaintiffs are "retailers," "distributors," and "importing distributors" under the Pennsylvania Liquor Code, 47 Pa.Stat. §§ 1–101 to 8–803 the statutory scheme dealing with the distribution in the Commonwealth of beer and liquor. (Answer ¶ 13).

Pennsylvania's scheme of the sale and distribution of malt liquor is a three tiered structure which consists of the manufacturers, distributors and importing distributors, and retailers. Manufacturers are li-

censed by the LCB to manufacture, sell, and transport malt or brewed beverages. *See* 47 Pa.Stat. § 1–102.[1] Distributors are licensed by the LCB to purchase only from Pennsylvania manufacturers and importing distributors, and to resell the malt or brewed beverages in quantities of not less than one-hundred twenty-eight (128) ounces. *See id.*[2] Importing distributors are similar to distributors, but they may purchase from manufacturers outside the Commonwealth. *See id.*[3] Retailers are licensed by the LCB to sell the malt or brewed beverages. *See id.*[4] The manufacturers must sell to the distributors and the distributors must buy from the manufacturers. *See id.* The distributors sell to the retailers who must buy from the distributors. *See id.*

The Commonwealth's regulation of liquor and alcohol is very different as compared with the regulation of malt and brewed beverages. *Compare* 47 Pa.Stat. § 2–207, *with* § 4–431. The purchase of liquor and alcohol is made by the LCB "at the lowest price and in the greatest variety reasonably determined." *See* 47 Pa.Stat. § 2–207(a). Prices of liquor and alcohol are fixed at the wholesale and retail level. *See id.* § 2–207(b). In contrast, malt and brewed beverage prices are set by the wholesaler (distributor), but the LCB regulates the ability of the distributor to raise and lower the prices of malt and brewed beverages. *See* 47 Pa.Stat. § 4–477.

This is the third attempt by the Commonwealth of Pennsylvania within the last ten years to regulate the price of malt and brewed beverages, this court having struck down the two previous attempts of the Commonwealth to do so. *See Stroh Brewery Co. v. Walp,* No. 1:Cv–93–937 (M.D.Pa. April 4, 1994); *Anheuser–Busch, Inc. v. Goodman,* 745 F.Supp. 1048 (M.D.Pa. 1990). The Commonwealth's stated purpose in regulating malt and brewed beverages is "to discourage increased consumption and irresponsible conduct resulting from impulse buying, price promotion or the natural elasticity of demand relative to price." 47 Pa.Stat. § 4–447(a).

The Commonwealth has attempted to meet that objective by enacting the following pricing scheme. Subsection 447(a)(2)

---

1. A manufacturer of malt or brewed beverages is defined as:

   any person holding a license issued by the board to engage in the manufacture, transportation and sale of malt or brewed beverages; also, any person engaged in the legal manufacture of malt or brewed beverages within the territorial limits of the United States, outside the Commonwealth of Pennsylvania.
   *Id.*

2. A distributor is defined as:

   any person licensed by the board to engage in the purchase only from Pennsylvania manufacturers and from importing distributors and the resale of malt or brewed beverages, except to importing distributors and distributors, in the original sealed containers as prepared for the market by the manufacturer at the place of manufacture, but not for consumption on the premises where sold, and in quantities of not less than a case or original containers containing one hundred twenty-eight ounces or more which may be sold separately.
   *Id.*

3. An importing distributor is defined as:

   any person licensed by the board to engage in the purchase from manufacturers and other persons located outside this Commonwealth and from persons licensed as manufacturers of malt or brewed beverages and importing distributors under this act, and the resale of malt or brewed beverages in the original sealed containers as prepared for the market by the manufacturer at the place of manufacture, but not for consumption on the premises where sold, and in quantities of not less than a case or original containers containing one hundred twenty-eight ounces or more which may be sold separately.
   *Id.*

4. A retailer is defined as:

   any person licensed to engage in the retail sale of malt or brewed beverages for consumption on the premises of such licensee, with the privilege of selling malt or brewed beverages in quantities not in excess of one hundred ninety-two fluid ounces in a single sale to one person, to be carried from the premises by the purchaser thereof.
   *Id.*

provides that if a manufacturer, importing distributor, or distributor reduces the price of any brand of malt or brewed beverages, it may subsequently reduce the price a second time, but that price must be maintained for at least one-hundred twenty (120) days. *See* 47 Pa.Stat. § 4–447(a)(2).[5] If the price is lowered "within the geographic area for which [an importing distributor or distributor] possesses distribution rights for that product," that price must be lowered to all other importing distributors, distributors, or retail licensees in that geographic area. *See id.* § 4–447(a)(3).[6]

There are several exceptions to subsection 447(a)(2). Prices may be reduced to reflect a tax increase. *See id.* § 4–447(a)(2)(ii). In addition, if a competitor lowers its price on a brand of malt or brewed beverage, a manufacturer, importing distributor, or distributor may reduce its price on the same or similar brand of malt or brewed beverage. *See id.* § 4–447(b).[7] The price reduction, however, cannot be greater than the competitor's price reduction and the price must be maintained for at least 120 days after the competitor's price became effective or after the competitor's price is lawfully rescinded. *See id.*

Moreover, under subsection 447(c), a manufacturer, importing distributor, or distributor "may change the price ... if market conditions or other good cause support the change." *See id.* § 4–447(c).[8] If

5. Subsection 4–447(a)(2) provides, in pertinent part, as follows:

> Any manufacturer, importing distributor or distributor which reduces the price on any package of any brand of malt or brewed beverage sold for resale within this Commonwealth may further reduce the price at any time, but any reduction shall continue in full force and effect for at least one hundred twenty days from the date on which the last such reduced price becomes effective

6. Subsection 4–447(a)(3) reads, in pertinent part, as follows:

> If an importing distributor or distributor of malt or brewed beverages lowers the wholesale price on any package of any brand of malt or brewed beverages to one importing distributor or distributor or retail licensee within the geographic area for which he possesses distribution rights for that product, the importing distributor or distributor shall lower the wholesale price on such package of such brand offered or sold to all other importing distributors or distributors or retail licensees within the geographic area by a like amount.... If such importing distributor or distributor, having lowered the wholesale price on a package of a brand pursuant to this section, subsequently raises the wholesale price on such package of such brand to one importing distributor or distributor or retail licensee within the geographic area for which he possesses distribution rights for that product, the importing distributor or distributor shall raise the wholesale price on such package of such brand offered or sold to all other importing distributors or distributors

or retail licensees within the geographic area by a like amount.

7. Subsection 4–447(b) provides as follows:

> If any manufacturer, importing distributor or distributor has reduced the wholesale price of any package of any brand of malt or brewed beverages, any other manufacturer, importing distributor or distributor may reduce the wholesale price on the same or similar package or competing brand to meet competition, which reduction shall:
> (1) not exceed the reduction to which it responds; and
> (2) continue in full force and effect until the earlier of:
> (i) the one hundred twentieth day after the date on which the reduction to which it responds became effective; or
> (ii) the lawful rescission of the reduction to which it responds.

8. Subsection 4–447(c) provides as follows:

> A manufacturer, importing distributor or distributor may change the price within a time period of less than one hundred twenty days from when the price went into effect if market conditions or any other good cause support the change. The manufacturer, importing distributor or distributor shall notify the board within forty-eight hours of the change of such price. The board shall set a hearing date as soon as practicable and shall rule on whether the manufacturer, importing distributor or distributor has made an appropriate showing which supports the price change. If the manufacturer, importing distributor or dis-

a price is changed under subsection 447(c), the LCB must be notified within forty-eight (48) hours of the change so that the LCB can schedule a hearing to determine if the price was changed for good cause. *See id.* If, after a hearing, the LCB determines that the price was not changed for good cause, a manufacturer, importing distributor, or distributor must refund the difference to all importing distributors, distributors, or retail licensees who purchased from them. *See id.*

## III DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that the moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir.), *cert. denied*, 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 329, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir.1988); *Continental Ins. Co. v. Bodie*, 682 F.2d 436 (3d Cir.1982). Once the moving party has satisfied its burden, the nonmoving party "must present affirmative evidence to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505. Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Rule 56 requires the entry of summary judgment, after adequate time for discovery, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323, 106 S.Ct. 2548.

### B. Hybrid Restraint

Of relevance to both the defendants and plaintiffs' motions for summary judgment is the determination that this case involves a hybrid restraint of trade. In denying the defendants' motion to dismiss, Judge Caldwell found that the defendants are not exempt under the state action doctrine because the statutory scheme here at issue constituted "a hybrid restraint that allows private entities to set prices." *See Beer & Pop Warehouse, Inc. v. Jones*, No. 97 Civ. 753, slip op. at 11 (M.D.Pa. Oct. 17, 1997) (citing *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943)). Therefore, the doctrine exempting state action from the application of the Sherman

---

tributor fails to show good cause, it shall reimburse the difference between the origi-

nal and increased price to those who purchased the malt or brewed beverage.

Act is not available to the defendants. *See id.*

## C. Defendants' Motion for Summary Judgment

■ Plaintiffs seek to enjoin the defendants from enforcing subsections 447(a)(2), (a)(3), (b), and (c) of the Pennsylvania Liquor Code. *See* 15 U.S.C. § 26. Defendants argue that they are entitled to summary judgment because plaintiff "fail[ed] to make a showing sufficient to establish the existence of an element essential to" their Sherman Act claim, namely plaintiff has produced no evidence of a "threatened" anti-trust injury. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. In *Cargill, Inc. v. Monfort*, 479 U.S. 104, 110–111, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986), the Supreme Court held that "the plaintiff must . . . allege an injury of the type the antitrust laws were designed to prevent." *Id.* The Court, however, noted that section 16 of the Clayton Act provides that a plaintiff need only show a " 'threatened' loss or damage" to establish a violation of the Sherman Act. *Id.* (citing 15 U.S.C. § 26).

Plaintiffs have produced evidence of a threatened loss or damage of the type the antitrust laws were designed to prevent. *See id.* The enforcement of subsections 447(a)(2), (a)(3), (b), and (c) threatens to reduce the plaintiffs' sales and profits. This threat is evidenced by the very purpose of the statute, namely to reduce the consumption of alcohol. *See* 47 Pa.Stat. § 4–447(a). The Commonwealth's goal to reduce the consumption of alcohol threatens to reduce the plaintiffs' sales and profits. Moreover, as retailers, plaintiffs argue that "[w]hen the 120–day law was not in effect, [plaintiffs] were able to buy things cheaper, pass that money on to the consumer, and increase their sales· and

drive their business." (David‚Trone Dep. at 91.) Plaintiffs also contend that the absence of short-term discounts results in higher acquisition costs which must be passed on to their customers. (See id. at 108–09.) This could mean reduced sales because of higher prices. (See id.) In addition, if the plaintiffs did not raise their prices, it would follow that the plaintiffs' profits would be reduced. (See, e.g., id.) Moreover, without short-term discounts, the plaintiffs have lost a marketing tool to increase the number of customers that visit their stores. (See id.)

■ The threatened reduction of plaintiffs' sales and profits is an injury of the type the antitrust laws were designed to prevent. *See Cargill, Inc.*, 479 U.S. at 109, 107 S.Ct. 484. Therefore, I find that the plaintiffs have made "a showing sufficient to establish the existence of an element essential to [their] case." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Accordingly, the defendants' motion for summary judgment will be denied.

## D. Plaintiffs' Motion for Summary Judgment

Plaintiffs argue that they are entitled to summary judgment because there is no genuine issue of material fact involved in the determination of whether subsections 447(a)(2), (a)(3), (b), and (c) violate section 1 of the Sherman Act.[9] *See* 15 U.S.C. § 1. I find they do violate section 1 of the Sherman Act. *See id.* This court has addressed what is essentially the same issue on two previous occasions. *See Stroh Brewery Co. v. Walp*, No.1:Cv–93–937 (M.D.Pa. April 4, 1994); *Anheuser–Busch, Inc. v. Goodman*, 745 F.Supp. 1048, 1056 (M.D.Pa.1990). In *Anheuser–Busch*, the

**9.** The plaintiffs also argue that they are entitled to summary judgment because the present subsection 4–447(a)(5) of the Pennsylvania Liquor Code had been previously invalidated by this court. Thus, the plaintiffs contend that the entire statute is invalid. On December 4 and 23 of 1998, the de-

fendants informed this court that subsection 4–447(a)(5) has been repealed by the Pennsylvania Legislature. Because this court does not rely on subsection 4–447(a)(5) in granting plaintiffs' motion for summary judgment, this court will not discuss the consequence of that repeal.

plaintiff challenged certain LCB regulations that

> prohibit[ed] a manufacturer from increasing a price to distributors within a 180 day period after making any reduction in price. This limit is also applicable any time a manufacturer introduces a new brand or package. The initial reduction in price must be reflected throughout the chain of distribution (i.e. the importing distributor must charge the reduced price to the distributor, who must in turn charge the reduced price to the retailer, etc.) The regulations further provide that whenever the manufacturer reduces a price to any distributor it must reduce the price to all other distributors across Pennsylvania in an equal amount.

*Id.* at 1054–55 (citing 40 PA CODE § 11.201(b)–(d)) (internal citations omitted).

The court held that the regulations violated section 1 of the Sherman Act. *See id.* at 1056. Specifically, the court held that the regulations "tend[ ] to stabilize prices, insulate prices from the flexibility of the free market, [and] impede a manufacturer's ability to employ market strategies through short-term or geographically-based price promotions." *Id.* The court said that "[t]he challenged LCB regulations impose administrative penalties on manufacturer[s] who fail to stabilize their prices accordingly, thereby compelling manufacturer[s] to comply with the anti-competitive restrictions promulgated by the LCB." *Id.* The court further found that "the LCB regulation requiring manufacturers to maintain the same price to all distributors in the state creates a bar to flexibility in geographic promotions." *Id.*

In *Stroh Brewery*, the plaintiff challenged the former provisions of subsections 447(a)(3) and (a)(5) of the Pennsylvania Liquor Code. *See Stroh Brewery*, slip. op. at 1 (citing 47 Pa.Stat. § 4–447(a)(3), (a)(5)). The former subsection 447(a)(3) of the Pennsylvania Liquor Code provided in pertinent part:

> "If a manufacturer, importing distributor or distributor of malt or brewed beverages lowers the wholesale price on any package of any brand of malt or brewed beverages to one importing distributor or distributor or retail licensee within this Commonwealth, the manufacturer, importing distributor or distributor shall lower the wholesale price on such package of such brand offered or sold to all other importing distributors or distributors or retail licensees within this Commonwealth by a like amount ... If such manufacturer, importing distributor or distributor, having lowered the wholesale price on a package of a brand pursuant to this section, subsequently raises the wholesale price on such package of such brand to one importing distributor or distributor or retail licensee within this Commonwealth, such manufacturer, importing distributor or distributor shall raise the wholesale price on such package of such brand offered or sold to all other importing distributors or distributors or retail licensees within this Commonwealth by a like amount."

*Id.* (quoting 47 Pa.Stat. § 4–447(a)(3)). The former subsection 447(a)(5) provided in pertinent part:

> "Every importing distributor and distributor receiving a price reduction on any package of any brand of malt or brewed beverages pursuant to this section shall reduce his price by a like amount to all classes of customers."

*Id.* (quoting 47 Pa.Stat. § 4–447(a)(5)).

The court held that subsections 447(a)(3) and (a)(5) violated section 1 of the Sherman Antitrust Act. *Id.* at 3–4 (citing 15 U.S.C. § 1). The court found that the subsections 447(a)(3) and (a)(5) were the same provisions it confronted in *Anheuser–Busch*, except in that case "they were in the form of regulations issued by the Pennsylvania Liquor Control Board." *Id.* at 5. The defendants in *Stroh Brewery* attempted to distinguish *Anheuser–Busch*

by relying on former subsection 447(c). Former subsection 447(c) provided that the LCB would allow a change in price " 'within a time period of less than one hundred eighty days ... upon an appropriate showing that market conditions warrant a change in price.' " *Id.* (quoting 47 Pa.Stat. § 4–447(c)). The court rejected the defendants' argument that subsection 447(c) "allows the LCB some flexibility to modify the statewide effect of any price reduction, and thus *Anheuser–Busch* should not be controlling here." *Id.* at 6.

The court said

section 4–447(c) does not refer to price modifications in particular geographic areas, only to modifications within the 180–day period. Therefore, there is doubt whether the LCB's interpretation of section 4–447(c) could survive a challenge by an interested party. Second, and more importantly, the procedure is too cumbersome and expensive in light of the interests to be served. It will not provide a manufacturer with the ability to alter prices quickly, which, in our view, it must have if section 4–447(c) is to overcome the anti[-]competitive effect of the provisions challenged in this case.

*Id.* at 8.

The plaintiffs argue that the present provisions of the Pennsylvania Liquor Code are essentially the same pricing schemes struck down in *Anheuser–Busch* and *Stroh Brewery.* The plaintiffs contend that the reduction to a 120–day rule from 180–day rule and the addition of allowing a price increase for a "tax increase" or for other good cause do not cure the previous defects struck down by this court. Subsection 447(a)(2)(i) allows for a price increase "to reflect any tax increase." *See* 47 Pa.Stat. 4–447(a)(2)(i). Subsection 447(c) allows for a price increase "if market conditions or any other good cause support the change," and provided that the LCB is notified within forty-eight (48) hours of the change so that the LCB can schedule a hearing to determined if the price was changed for good cause. *See* 47

Pa.Stat. § 4–447(c). The plaintiffs argue that like the former subsection 447(c) struck down in *Stroh Brewery,* the present price modification provisions of subsection 447(c) are "too cumbersome and expensive in light of the interests to be served." *See Stroh Brewery,* slip. op. at 8.

In addition, the plaintiffs argue that the change of subsection 447(a)(3) from maintaining prices within the entire Commonwealth to the distributor's geographic area does not cure the defects previous struck down by this court. *Compare* 47 Pa.Stat. § 4–447(a)(3), *with Stroh Brewery,* slip. op. at 2–3. The plaintiffs note that the defendants have admitted that some geographic areas include the entire Commonwealth while others include multiple counties. Thus, the plaintiffs argue that the provisions of subsection 447(a)(3) are "identical" to those invalidated by this court on two previous occasions.

The defendants argue that the new provisions of the Pennsylvania Liquor Code have cured the former defective provisions struck down in *Anheuser–Busch* and *Stroh Brewery.* Defendants argue that the provisions of the present subsection 447(c) are not cumbersome or onerous and are much different from the provisions of the former subsection 447(c) which were struck down by this court in *Stroh Brewery.* Defendants contend that the previous subsection 447(c) was struck down because an applicant would have to maintain its prices while its application to increase prices would be pending for well over a month. The defendants argue in contrast that the present section 447(c) provides that there is no need to wait to increase prices because prices may be raised so long as the LCB is notified within forty-eight hours of the increase. *See* 47 Pa. Stat. § 4–447(c). The defendants argue that the provision for a hearing by the LCB is fair because a hearing is "scheduled as soon as practicable" to determine if the prices were increased for good cause. *See id.* The defendants also argue that the refund provision requiring the

applicant to refund the excess price is fair. *See id.*

In addition, the defendants argue that the present subsection 447(a)(3) meets the previous concerns of this court. *See Anheuser–Busch,* 745 F.Supp. at 1056. In *Anheuser–Busch,* this court held that the requirement of "maintain[ing] the same price to all distributors in the state creates a bar to flexibility in geographic promotions, which are based on different markets and competition levels for various locations in Pennsylvania." *Id.* The defendants argue that the change from maintaining prices within the entire Commonwealth to the distributor's geographic area now cures any defect in the previous legislation.

After review of the present provisions of the Pennsylvania Liquor Code, I find that subsections 447(a)(2), (a)(3), (b), and (c) violate section 1 of the Sherman Act. *See* 15 U.S.C. § 1. Section 1 of the Sherman Act provides in pertinent part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal."[10] *Id.* In *Canterbury Liquors & Pantry v. Sullivan,* 16 F.Supp.2d 41 (D.Mass.1998), the court provided the following analysis of determining whether a statute violated section 1 of the Sherman Act:

In the federal system of government established by our Constitution, the laws of the United States are the "supreme Law of the Land." U.S. Const. Art. VI, and thus preempt and invalidate inconsistent state laws in certain circumstances. *See, e.g., Gibbons v. Ogden,* 22 U.S. (9 Wheat) 1, 210–11, 6 L.Ed. 23 (1824). The standard for determining whether the statute and regulations now at issue are preempted by § 1 of the Sherman Act is set forth in the Supreme Court's decision in *Rice v. Norman Williams Co.,* 458 U.S. 654, 102 S.Ct. 3294, 73 L.Ed.2d 1042 (1982). The Supreme Court in *Rice* said:

"[A] state statute, when considered in the abstract, may be condemned under the antitrust laws only if it mandates or authorizes conduct that necessarily constitutes a violation of the antitrust laws in all cases, or if it places irresistible pressure on a private party to violate the antitrust laws in order to comply with the statute. Such condemnation will follow under § 1 of the Sherman Act when the conduct contemplated by the statute is in all cases a per se violation. If the activity addressed by the statute does not fall into that category, and therefore must be analyzed under the rule of reason, the statute cannot be condemned in the abstract. Analysis under the rule of reason requires an examination of the circumstances underlying a particular economic practice, and therefore does not lend itself to a conclusion that a statute is facially inconsistent with federal antitrust laws."

*Id.* at 45 (quoting *Rice,* 458 U.S. at 661, 102 S.Ct. 3294) (footnote omitted).

The Supreme Court has found that " 'there are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use.' " *Id.* at 46 (quoting *Northern Pacific Ry.,* 356 U.S. at 5, 78

---

**10.** The Supreme Court has defined the Sherman Act as:

a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of trade. It rests on the premise that the unrestrained interaction of competitive forces will yield the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress ... The policy unequivocally laid down by the Act is competition.

*Canterbury Liquors & Pantry v. Sullivan,* 16 F.Supp.2d 41, 42 (D.Mass.1998) (quoting *Northern Pacific Ry. v. United States,* 356 U.S. 1, 4, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958)).

S.Ct. 514). In particular, the Supreme Court has found that "an agreement to adhere to previously announced prices [was] a per se violation" of the Sherman Act. *See id* at 47 (citing *Catalano, Inc. v. Target Sales, Inc.,* 446 U.S. 643, 647, 100 S.Ct. 1925, 64 L.Ed.2d 580 (1980) (per curiam))

■ I find that subsection 447(c) of the Pennsylvania Liquor Code is a per se violation of section 1 of the Sherman Act. *See id.* The provisions of subsection 447(c) to modify prices are "too cumbersome [if not expensive] in light of the interests to be served " *See Stroh Brewery,* slip. op. at 8. Particularly, the provision to allow a price to be increased is unclear. *See* 47 Pa.Stat. § 4–477(c). It is unclear as to how the LCB determines what is "good cause." *See id.* It is likewise unclear therefore how a manufacturer or wholesaler meets its burden of establishing good cause. Moreover, there is no way of knowing how long it will take for a hearing and how long it will take before there is a decision by the LCB. Furthermore, a manufacturer, distributor, or importing distributor is put into a perplexing situation when determining if it is raising its price for good cause. If a manufacturer, distributor, or importing distributor makes a mistake and the LCB does not find good cause for the raised prices, a manufacturer, distributor, or importing distributor will have to refund the difference to all who purchased from them. It places the manufacturers, distributors, and importing distributors in an untenable commercial situation of raising prices at the risk of the LCB deciding they must be refunded. This is further exacerbated by the uncertainty as to the time of the hearing and the time of the decision. The practical effect of this provision is to discourage any price change, thereby artificially fixing the prices among manufacturers and distributors thereby stifling competition. This entire scheme violates the premise of the Sherman Act, to "yield the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress." *See Northern Pacific Ry.,* 356 U.S. at 4, 78 S.Ct. 514. Therefore, I find that subsection 447(c) is a per se violation of section 1 of the Sherman Act, because the provisions of subsection 447(c) are not only burdensome, expensive, and cumbersome, but have the effect of freezing or fixing prices because the use of the LCB process is at best vague and uncertain and the standards to be applied undefined.

In addition, subsection 447(a)(3) is a per se violation of section 1 of the Sherman Act. *See Catalano, Inc.,* 446 U.S. at 647, 100 S.Ct. 1925. The provisions of subsection 447(a)(3) are similar to the provisions previously struck down by this court. *See Anheuser–Busch,* 745 F.Supp. at 1056. Although the present subsection 447(a)(3) is limited to a distributor's geographic area, the provisions are still a "bar to flexibility in geographic promotions, which are based on different markets and competition levels for various locations in Pennsylvania." *See id.* The defendants have admitted that some geographic areas include the entire Commonwealth while others include multiple counties. This court is still concerned that subsection 447(a)(3) "impede[s] a [distributor's] ability to employ market strategies through short-term or geographically-based price promotions." *See id.* The Supreme Court has held that these types of pricing schemes reduce competition and restrain trade. *See id.* (citing *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980)). Therefore, I find that subsection 447(a)(3) is a per se violation of section 1 of the Sherman Act. *See* 15 U.S.C. § 1.

Moreover, in *Anheuser–Busch,* this court noted that "the Supreme Court has consistently held that when price maintenance by individual parties is facilitated or compelled by state regulation competition is destroyed as effectively as if private parties formed an agreement not to compete." *Id.* at 1055 (citing *California Retail Liquor Dealers Ass'n v. Midcal Alu-*

*minum, Inc.* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980) (internal citations omitted)). Here, plaintiffs argue that retailers must buy from wholesalers who are compelled to maintain their prices for 120 days. *See* 47 Pa.Stat. § 4–447(a)(2). As a result, competition is reduced because wholesalers cannot lower or raise their prices at will. *See id.* Plaintiffs have produced evidence that "[w]hen the 120–day law was not in effect, [retailers] were able to buy things cheaper, pass that money on to the consumer, and increase their sales and drive their business." (David Trone Dep. at 91.) Plaintiffs contend that the absence of short-term discounts results in higher acquisition costs which must be passed on to the customers of retailers. (See id. at 108–09.) In addition, without short-term discounts, the retailers have lost a marketing tool to increase the number of customers that visit their stores. (See id.) This results in artificial price fixing and the stifling of competition. It has the same effect as an agreement in restraint of trade. Therefore, the Pennsylvania Liquor Code prevents the plaintiffs from seeking a competitive price because all prices are the same, and the LCB does not determine whether that price is reasonable.

Accordingly, plaintiffs' motion for summary judgment will be granted. Defendants will be permanently enjoined from enforcing subsections 447(a)(2), (a)(3), (b), and (c) of the Pennsylvania Liquor Code.

An appropriate order will follow.

### ORDER

NOW, this 14th day of JANUARY, 1999, it is hereby ORDERED that

1) Defendants' motion for summary judgment (Doc. # 60) is denied;

2) Plaintiffs' motion for summary judgment (Doc. # 45) is granted;

3) Defendants are permanently enjoined from enforcing subsections (a)(2), (a)(3), (b), and (c) of 47 Pa.Stat. § 4–477 (originally enacted Act of Dec. 20 1996, P.L. 1513, No. 196).

4) The clerk of the court is directed to close this case.