Connecticut Fine Wine and Spirits, LLC v. Seagull

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of September, two thousand nineteen.

PRESENT:

ROBERT A. KATZMANN,
*Chief Judge*,
JOSÉ A. CABRANES,
ROSEMARY S. POOLER,
PETER W. HALL,
DEBRA ANN LIVINGSTON,
DENNY CHIN,
RAYMOND J. LOHIER, JR.,
SUSAN L. CARNEY,
RICHARD J. SULLIVAN,
JOSEPH F. BIANCO,
MICHAEL H. PARK,
*Circuit Judges*.

---

CONNECTICUT FINE WINE AND SPIRITS, LLC, d/b/a, TOTAL WINE & MORE,

*Plaintiff-Appellant*,

v.

No. 17-2003

COMMISSIONER MICHELLE H. SEAGULL, DEPARTMENT OF CONSUMER

PROTECTION, JOHN SUCHY, DIRECTOR, DIVISION OF LIQUOR CONTROL,

*Defendants-Appellees*,

WINE & SPIRITS WHOLESALERS OF CONNECTICUT, INC., CONNECTICUT BEER WHOLESALERS ASSOCIATION, INC., CONNECTICUT RESTAURANT ASSOCIATION, CONNECTICUT PACKAGE STORES ASSOCIATION, INC., BRESCOME BARTON, INC.,

*Intervenors-Defendants-Appellees*.

| | |
|---|---|
| For Plaintiff-Appellant: | William J. Murphy, John J. Connolly, Adam B. Abelson, Zuckerman Spaeder LLP, Baltimore, MD. |
| | James T. Shearin, Edward B. Lefebvre, Pullman & Comley LLC, Bridgeport, CT. |
| For Defendants-Appellees: | Clare E. Kindall, Solicitor General, Robert J. Deichert, Assistant Attorney General, *for* William Tong, Attorney General, Hartford, CT. |
| For Intervenors-Defendants-Appellees: | David S. Hardy, Damian K. Gunningsmith, Carmody Torrance Sandak & Hennessey LLP, New Haven, CT. |
| | Michael J. Spagnola, Siegel, O'Connor, O'Donnell & Beck, P.C., Hartford, CT. |

2

Patrick A. Klingman, Klingman Law, LLC, Hartford, CT.

Robert M. Langer, Benjamin H. Diessel, Wiggin and Dana LLP, Hartford, CT.

Deborah Skakel, Craig M. Flanders, Blank Rome LLP, New York, NY.

John F. Droney, Jr., Jeffrey J. Mirman, Hinckley Allen & Snyder, LLP, Hartford, CT.

Following disposition of this appeal on February 20, 2019, an active judge of the Court requested a poll on whether to rehear the case *en banc*. A poll having been conducted and there being no majority favoring *en banc* review, rehearing *en banc* is hereby **DENIED**.

Richard J. Sullivan, *Circuit Judge*, joined by José A. Cabranes, Debra Ann Livingston, and Michael H. Park, *Circuit Judges*, dissents by opinion from the denial of rehearing *en banc*.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

RICHARD J. SULLIVAN, *Circuit Judge*, joined by JOSÉ A. CABRANES, DEBRA ANN LIVINGSTON, and MICHAEL H. PARK, *Circuit Judges*, dissenting from the denial of rehearing *en banc*:

Today our Court declines to reconsider *en banc* the panel's holding that Connecticut's "post-and-hold" alcohol pricing statute is consistent with Section 1 of the Sherman Act. Although that holding was clearly compelled by our prior decision in *Battipaglia v. New York State Liquor Authority*, 745 F.2d 166 (2d Cir. 1984), I believe we should have taken this opportunity to join federal courts across the country in rejecting *Battipaglia*'s majority opinion in favor of Judge Winter's forceful dissent in that case. As a result of this refusal to grant rehearing, we perpetuate a longstanding circuit split and continue to allow de facto state-sanctioned cartels of alcohol wholesalers to impose artificially high prices on consumers and retailers across all three states in our Circuit. That strikes me as an unfortunate consequence, particularly when the correct legal analysis has been staring us in the face for more than thirty-five years. Accordingly, I respectfully dissent from the denial of rehearing *en banc*.

I.

Connecticut's post-and-hold scheme contains three main components. First, alcohol wholesalers must share their prices with market participants on a monthly

basis (the "post"). Conn. Gen. Stat. § 30-63(c). Second, wholesalers have four days to adjust their posted prices, except that they cannot go below the lowest posted price. *Id.* Third, at the end of the price-adjustment period, wholesalers must adhere to their adjusted prices for one month (the "hold"). *Id.*

A divided panel of our Court upheld New York's nearly identical post-and-hold scheme in *Battipaglia*. Writing for the majority, Judge Friendly concluded that such a scheme did not mandate or authorize conduct that would be *per se* illegal had it been the subject of a private agreement. 745 F.2d at 173–75 (citing *Rice v. Norman Williams Co.*, 458 U.S. 654, 659–61 (1982)). In so concluding, Judge Friendly focused mainly on the post, observing that "[t]he Supreme Court has never held that the exchange of price information . . . 'necessarily constitutes a violation of the antitrust laws in all cases.'" *Id.* at 174 (quoting *Rice*, 458 U.S. at 661).

That reasoning, however, failed to account for the *per se* illegality of the hold. As Judge Winter explained in dissent, a "requirement of adherence to announced prices has been uniformly held illegal without regard to its reasonableness." *Id.* at 179 (Winter, J., dissenting) (citing *Sugar Inst. v. United States*, 297 U.S. 553, 601 (1936) (explaining that "steps . . . to secure adherence, without deviation, to prices and terms . . . announced" are illegal)); *see also Catalano, Inc. v. Target Sales, Inc.*, 446

2

U.S. 643, 649–50 (1980) (per curiam) (recognizing the "plain distinction between the lawful right to publish prices . . . on the one hand, and an agreement among competitors limiting action with respect to the published prices, on the other").

In the years following our decision in *Battipaglia*, courts outside our Circuit have – without exception – rejected Judge Friendly's position and instead followed Judge Winter's dissent in striking down similar post-and-hold laws. *See Costco Wholesale Corp. v. Maleng*, 522 F.3d 874, 893 n.15, 894–96 (9th Cir. 2008) (noting that "Judge Friendly's antitrust analysis strangely failed to account for the New York requirement that posted prices be adhered to by wholesalers," and agreeing with Judge Winter's "pointed[] observ[ation] in dissent" that a post-*and-hold* requirement was *per se* unlawful); *TFWS, Inc. v. Schaefer*, 242 F.3d 198, 209–10 (4th Cir. 2001) (noting that "*Battipaglia* has not been followed elsewhere" and concluding that it was "obvious" that "agreements to adhere to previously announced prices are unlawful *per se*"); *Canterbury Liquors & Pantry v. Sullivan*, 16 F. Supp. 2d 41, 47 (D. Mass. 1998) ("I am persuaded by the reasoning and statements of the Supreme Court to concur with . . . Judge Winter in this case."); *see also Miller v. Hedlund*, 813 F.2d 1344, 1348–51 (9th Cir. 1987) (holding Oregon's post-and-hold law preempted by the Sherman Act); *Beer & Pop Warehouse v. Jones*,

3

41 F. Supp. 2d 552, 560–62 (M.D. Pa. 1999) (similar). A leading antitrust treatise has also endorsed Judge Winter's position. *See* Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 217b2 (4th ed. 2013) ("Given the great danger that agreements to post and adhere will facilitate horizontal collusion, the dissent's position [in *Battipaglia*] is more consistent with [Supreme Court precedent].").

Despite this consensus, the panel opinion doubles down on *Battipaglia*, concluding that, "[i]f anything, its reasoning has been fortified by intervening decisions like *Fisher* [*v. City of Berkeley*, 475 U.S. 260 (1986)] and [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)]." *Conn. Fine Wine & Spirits, LLC v. Seagull*, 932 F.3d 22, 39 (2d Cir. 2019) *as amended* (July 29, 2019). According to the panel, *Fisher* permits state post-and-hold laws unless they mandate or authorize actual "concerted action" among alcohol wholesalers. *Id.* at 38. Similarly, the panel likens alcohol wholesalers to the telecommunications carriers held to be engaging in lawful parallel conduct in *Twombly*. *Id.* at 38–39.

The panel's reasoning stretches *Fisher* and *Twombly* too far. In *Fisher*, the Supreme Court upheld a Berkeley ordinance that – unlike a post-and-hold law – unilaterally imposed rent ceilings upon landlords "to the exclusion of private control." 475 U.S. at 266. In doing so, the Court distinguished such "unilateral"

4

restraints, which are not subject to antitrust preemption, from "hybrid" restraints, which grant private actors "a degree of private regulatory power." *Id.* at 267–68.

Although the panel opinion "do[es] not take issue" with the district court's classification of Connecticut's post-and-hold law as a hybrid restraint, it cites *Fisher* for the proposition that preemption is not warranted unless the statute in question authorizes or compels actual "concerted action" among private parties. *Conn. Fine Wine & Spirits, LLC*, 932 F.3d at 38. But again, *Fisher* requires no such thing. As the Supreme Court clarified only a year later in *324 Liquor Corp. v. Duffy*, a hybrid restraint may be attacked under *Fisher* even when "there is no 'contract, combination . . . , or conspiracy, in restraint of trade.'" 479 U.S. 335, 345 n.8 (1987) (quoting 15 U.S.C. § 1); *see also Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 223 n.17 (2d Cir. 2004) ("[S]ince our decision in *Battipaglia*, the Supreme Court has made it clear that an actual 'contract, combination or conspiracy' need not be shown for a state statute to be preempted by the Sherman Act." (quoting *324 Liquor Corp.*, 479 U.S. at 345 n.8)). Likewise, *Twombly* did not involve a hybrid restraint (or any state-imposed restraint for that matter), and I am aware of no case, other than the panel opinion in this case, extending *Twombly*'s antitrust holding to the special context of hybrid restraints.

5

Moreover, the panel opinion's overriding focus on concerted action overlooks the economic realities of a post-and-hold pricing scheme. The problem with Connecticut's law is not that it affirmatively compels wholesalers to collude in order to fix prices, but rather that it provides no incentive – or ability – for wholesalers to compete on price. *See Costco Wholesale Corp.*, 522 F.3d at 896 (citing George Stigler, *A Theory of Oligopoly*, 72 J. Pol. Econ. 44 (1964)); *Miller*, 813 F.2d at 1349 ("Simply ending the analysis because of the lack of concerted activity among the wholesalers fails to take into account the presence and effect of the state's involvement in the matter."). Connecticut has imposed a scheme whereby wholesalers are encouraged to pick inflated prices for alcohol, knowing that they will always be able to match the price of a competitor. By contrast, a market entrant hoping to gain market share by lowering prices will inevitably be frustrated by the adjust-and-hold provisions of the statute, which will prevent the entrant from further reducing prices. Since wholesalers will never be punished for artificially high prices, or rewarded for market-based low prices, they are likely to eventually degenerate into a de facto cartel in which wholesalers vie to post the highest possible prices without fear of market reprisal.

As courts across the country have recognized, these are precisely the kinds of anticompetitive effects that doomed similar liquor laws under the Sherman Act. *See 324 Liquor Corp.*, 479 U.S. at 342 (striking down liquor laws that were "virtually certain" to reduce competition and that may have "facilitat[ed] cartelization"); *Costco Wholesale Corp.*, 522 F.3d at 896 ("State enforcement of adherence to privately set, supra-competitive prices is precisely the danger which the Supreme Court envisioned in crafting the hybrid and active supervision tests."); *TFWS, Inc.*, 242 F.3d at 214 (Luttig, J., concurring) ("[T]he Maryland regulations before us are *not* materially different from the regulations in *324 Liquor . . . .*"). Thus, intervening Supreme Court case law has undermined, not fortified, *Battipaglia*'s holding.

## II.

Of course, the mere fact that *Battipaglia* was wrongly decided does not, by itself, justify *en banc* review in this case. *En banc* rehearing is generally warranted only when (1) necessary to "secure or maintain uniformity of the court's decisions," or (2) the case "involves a question of exceptional importance." Fed. R. App. P. 35(a). But the latter condition is easily satisfied here.

First, this case perpetuates a circuit split between our Circuit and the Ninth and Fourth Circuits, *see Costco Wholesale Corp.*, 522 F.3d at 894–96; *TFWS, Inc.*, 242

7

F.3d at 210; *Miller*, 813 F.2d at 1348–51, the exact kind of situation that the Federal Rules of Appellate Procedure contemplate as appropriate for *en banc* rehearing, *see* Fed. R. App. P. 35(b)(1)(B); *id.*, Advisory Committee Notes (1998 Amendments) ("[A] situation that may be a strong candidate for a rehearing *en banc* is one in which the circuit persists in a conflict created by a pre-existing decision of the same circuit and no other circuits have joined on that side of the conflict."). Indeed, the circuit split in this case is particularly well-suited for resolution by our *en banc* court in light of its longstanding duration (thirty-two years years since the Ninth Circuit's contrary decision in *Miller v. Hedlund*), developments in Supreme Court case law since *Battipaglia* was decided thirty-five years ago, and the formidable collection of authorities now rejecting *Battipaglia*'s holding.[1] *See supra* at 3–4.

Second, post-and-hold laws impose serious and well-recognized harms on consumers and retailers across all three states in our Circuit. *See, e.g.*, James C. Cooper & Joshua D. Wright, *Alcohol, Antitrust, and the 21st Amendment: An Empirical Examination of Post and Hold Laws*, 32 Int'l Rev. L. & Econ. 379, 390 (2012)

---

[1] Shortly before *Battipaglia* was decided, two state supreme courts ruled that their states' post-and-hold laws were unilateral restraints not subject to preemption under the Sherman Act. *See Intercontinental Packaging Co. v. Novak*, 348 N.W.2d 330, 337–38 (Minn. 1984); *Wine & Spirits Specialty, Inc. v. Daniel*, 666 S.W.2d 416, 418–19 (Mo. 1984). Like *Battipaglia*, those cases have not been followed elsewhere, and their reasoning has been undermined by the Supreme Court's subsequent development of the "hybrid restraint" classification in *Fisher* and *324 Liquor Corp.* – a classification that, as the panel opinion acknowledges, applies to Connecticut's post-and-hold law. *Conn. Fine Wine & Spirits, LLC*, 932 F.3d at 38.

8

("Our results suggest that constraining antitrust enforcement [against post-and-hold regimes] . . . would result in lower consumer welfare for alcoholic beverage consumers with no offsetting reduction in social harms."); *see also* Christopher T. Conlon & Nirupama Rao, *The Price of Liquor is Too Damn High: Alcohol Taxation and Market Structure* 34 (NYU Wagner Research Paper No. 2610118, 2015), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2610118 (demonstrating "how [post-and-hold] legislation, which governs wholesale alcohol pricing in many states, acts as a device to facilitate collusion"). Although this case directly concerns only Connecticut's post-and-hold statute, similar laws also exist in New York and Vermont. *See* N.Y. Alco. Bev. Cont. Law § 101-b(4) (liquor and wine post-and-hold law); 14-1 Vt. Code R. § 8 (beer post-and-hold law).[2] Surely the widespread anticompetitive harms that post-and-hold laws inflict across our Circuit provide sufficient justification to merit revisiting *Battipaglia*, a case that has become an outlier over the last three and a half decades.

\* \* \*

---

[2] Unlike Connecticut's and New York's post-and-hold schemes, Vermont's scheme does not include an "adjust" provision under which wholesalers have a short period of time to match the lowest posted price before the hold takes effect. Nevertheless, while an adjust provision exacerbates the anti-competitive effects of post-and-hold laws, such laws are sufficiently anticompetitive on their own to violate the Sherman Act. *See Costco Wholesale Corp.*, 522 F.3d at 896 n.18 ("[The absence of an adjust provision] will not save the [post-and-hold] scheme from per se condemnation. That firms are not empowered immediately to alter their prices to meet a lower price or to adjust to a higher price does not alter the conclusion that in the long run, prices for beer and wine are more likely to be uniform and stable because of tacit collusion.").

9

Members of our Court have frequently invoked the "virtues of restraint" – including judicial economy, collegiality, and "our Circuit's longstanding tradition of general deference to panel adjudication" – to counsel against *en banc* review, even where a case presents a question of exceptional importance. *United States v. Taylor*, 752 F.3d 254, 256 (2d Cir. 2014) (Cabranes, J., dissenting from the denial of rehearing *en banc*) (quotation marks and citations omitted). But while the propriety of assigning these "virtues" such significant weight may be fairly debated as a general matter, such considerations are hardly implicated under the unusual circumstances of this case, which turns on a 1984 split decision that has been undermined by intervening Supreme Court case law and roundly rejected by courts and commentators alike. Here, it would have been simple enough to grant *en banc* rehearing and largely adopt the reasoning of Judge Winter's prescient dissent in *Battipaglia*. Instead, we have chosen to leave in place a longstanding circuit split and to permit artificially high prices for alcohol consumers and retailers throughout our Circuit. Needless to say, I consider this a missed opportunity, and, for the reasons discussed above, I respectfully dissent.